May it please the Court, good morning, Your Honors. I am Tanya Whiteleather, and I represent the petitioner appellant in this matter, C.S. I believe and hope that my brief, opening brief and reply brief have fully explained our position in this, but I would like to summarize if I may. Please answer or ask any questions that you have. This is an IDEA, Individuals with Disabilities Education Act matter. There was a due process hearing and there was an administrative decision in that matter. The finding of the administrative hearing officer, the administrative law judge, we believe was not supported by the facts and evidence. The judge found, among other things, that there was no regular education teacher at an IEP held in July of 2005 for C.S. That there were no goals created, which is a necessary part of an individual education program, IEP plan, that were sufficient at that IEP. And finally, the administrative judge found that there was no offer of a free appropriate public education, FAPE, one of the many acronyms in special education, offered at that IEP. The judge, however, found that the district didn't have to make an offer because the parents somehow hadn't cooperated in an IEP. It is the district's duty to provide an offer, a written offer, under a number of cases, and one of those that I did not mention, although I cited W.G. v. Target Range in my briefs, there is a statement by this Target Range case indicating that even if the parents indicate they will not accept an offer being made by a local educational agency, school district, that school district still has to make an offer to the parents, a written offer. And can you submit that case to the court? That is in the briefs. All right. Let me ask about that. Yes. What you're saying, then, is what are you asking on this appeal? You know, on this appeal, you want reimbursement for life, you want you didn't ask for this case to be remanded for a FAPE to be offered. Is that part of your appeal? They have not offered a FAPE. No, it would be compensatory education, Your Honor. I know. So you have not asked this court, you have not appealed to this court, the question of that they failed to offer within the appropriate time of FAPE. Is that correct? That is correct. And may I explain why? Yes, please. That period has expired. An IEP must be held annually. The IEP for in July of 2005 would have been for the 2005-2006 school year. That has come and gone. So you're not asking for a FAPE now? We're asking for FAPE in the terms of an equitable remedy, compensatory education pursuant to Burlington, because the parents have, without any written... So, counsel, just so I follow up on your response to Judge Nelson, as I understand your position, you're saying that etched in stone is the requirement that a FAPE be offered within a certain period of time? Yes. The statute clearly requires that the parents be given a full opportunity to participate in the development of that FAPE. Your contention is, however, that that imposes no burden on the parents, so that if the parents stonewall and the time limit is exceeded, then the appropriate FAPE is not required. I don't think that quite states our position. May I explain? Yes. Our position is that, and we think we're very much backed by case law, Target Range is one of them. Union, also cited in the briefs, is another Union v. Smith. The both cases among a host of others say that the parents must, should be allowed meaningful participation if the parents somehow do not cooperate. It is still incumbent, mandated, that the district present an offer. And under 20 U.S.C. 1414, as well as state law, also cited in the briefs, Education Code, there is a whole procedure for a local education agency to hold an IEP if, which we contend was not the case here, the parents stonewall. Here there's very little information. The parents indicated they had received an initial IEP invitation after July of 2005, but that they didn't get back, they didn't get a further notice. So there's a procedure. Under state law, the school district was supposed to contact them, go to their home. This is all in the Education Code, again, as cited in the brief. Do everything they can. And if the parents are uncooperative, it's the duty of the school district to either hold the IEP without them or to still make a written offer. All right. That being the case, I'm still getting back to what the remedy. I realize you're asking for compensatory damages. So under your theory, there would be no reason to remand to have them do a FAPE. That's over with. All you want are compensatory damages. It's an equitable remedy, yes, compensatory damages. All right. You've clarified that. Thank you. And we also have the further problem complicated by the district court's failure to do a full review of this. Typically, it's a de novo review required of the underlying administrative due process decision. We have a page and a half, I believe, from the district court, no explanation as to why there was any finding in any area, simply a finding by the court that the student has lost, the school district is correct and won, and the decision of the administrative hearing officer was upheld. We believe that was clear error. All right. Let me ask you, you made a comment. You don't necessarily agree the parents didn't cooperate. They've not provided records. They were unwilling to reschedule. If we're talking about an equitable remedy, if they have not acted appropriately, let me put it as gently as I can, why should we grant them anything? Because IDEA mandates it. If a parent, first of all, assessments, any assessments to be done, if the district wants an assessment, the parent is not required, Union v. Smith, to provide copies of its private assessment, that this court has made it very clear it's the district's duty to assess. In fact, on the record, and submitted to this court, the parents had allowed the district to come in and review, observe the child. They had provided information, there was some information requested about an assessment from another district, not in the parent's possession. But this is not a balancing ---- You didn't have any of those records in their possession? They had no records to provide? I believe they did, but there is nothing that requires the parents to provide those as part of an assessment. There is no ---- We're talking about an equitable remedy. And if there's uncooperative, if they're not cooperating at all, since it's an equitable remedy, that certainly comes into play. They call it clean hands. I understand. And we don't think that's the case. Because the evidence was that the parents invited the school district to their home to observe. Well, why wouldn't they give this stuff to the school district? I think there was some confusion. I don't think there was ---- because the parents had indicated they would, from the get-go, that they would provide that. Don't you have an adverse ---- don't you have some adverse fact findings by the Administrative Law Judge? As to what, Your Honor? Cooperation. They found that the parents ---- the evidence was that the parents had received a notice and indicated that that was not a workable date, because the law is very clear, the IEP must be held at a time and date that is workable for the parents, and indicated that they would get back to the district. The parents admitted that they did not. That's a very simple thing. Under the California Ed Code, as well as IDEA, the district is required to take steps to schedule the IEP. They could have, following ---- In regards to what they could have done, didn't the Administrative Law Judge make adverse fact findings? Yes. And that was not supported by the record. That was not, we believe, supported by the records. I see Your Honor grimacing, and I apologize, but that's our position. The parents, the district, whether or not the parents cooperated after, this completely ignores whether or not, on July 14th, 05, having done a complete assessment, when the district admitted it needed no further ---- What about this? What if the Court were to issue a memorandum of disposition that says The district is under an obligation to provide an AEIP within X days. They didn't do it. Therefore, the plaintiffs win. However, plaintiffs' failure to cooperate leads us to conclude that no compensatory damages are warranted. Therefore, you win a pyrrhic victory, each side to bear its own costs. Why isn't that a ---- That's not appropriate because the district admitted it hearing. It's in the transcripts. They said they didn't need the information. It wouldn't have changed their assessments. It had nothing to do with any information they required. This was the testimony entered at hearing. They didn't need the assessments. Union v. Smith backs that up. If the district wants an assessment, if they need information, they are required to conduct an assessment through an assessment plan of their own. Whether or not the parents provided private records has nothing to do, not only in case law, but in this particular case, because the district stated on the record, district employees said that they did not need further information. Their assessments were complete. They had nothing more to do. They did indicate once somebody said we'd like to know more information, they were allowed the opportunity to observe in the home. And whether or not following July 05 IEP meeting, the parents contacted the district and actively, proactively took steps to notify them of a new IEP meeting. Again, it's not the parent's job. It's the district's job to send out the date. All of the law says it's the district's duty. Well, listen, we understand your argument. Okay, forward. The other, if I may? If there are any other questions, any other questions? If I, if I may, our position We have it all in the briefs. Well, our concern, my concern is that the court is looking at this post-July 05, as of July 14th 05, when the parents were sitting there at the meeting, when the district was required to make an offer. We, we understand. It never did. Thank you, Your Honor. Were you a school teacher? Yes, I was. I can tell. Thank you. I don't know if that's a good thing or a bad thing, but thank you. It's a good thing. I, I, I tell people, particularly when we have young women up there, the good ones that go up there and they look at me like they're my Mrs. Griffiths, my junior high school English teacher. And I have to listen. I don't look at the clock, see? My apologies if I've... Oh, no, no. ...invited you. I like, I like your style. Thank you. Okay. Were you a school teacher? I am not, Your Honor. Okay. I'm just a lawyer. Yes. Honorable Justices, may it please the Court, my name is Jack Clark. I represent Riverside Unified School District. I also represent the Desert Sands Unified School District in the district court below. In light of the questions that the Court asked of my... You might want to keep your voice down. ...my worthy opponent, excuse me.     One is, in answer to the question, did the Administrative Law Judge affirmably make findings adverse to the petitioner's position? Yes, the Administrative Law Judge did. At page 14 of her decision, in paragraphs 34, 35, and 36, the Administrative Law Judge went through in detail and explained that the IEP, which was originally convened July 14, 2005, was tabled in order to allow the parents an opportunity to observe district programs. They were new in the district, and the district acted very quickly after they arrived to initiate an assessment to do what was necessary so that with cooperation there would have been an educational program in place prior to the beginning of the school year. Unfortunately, the parents indicated, and this is important, in light of this Court's precedent under the Shapiro v. Paralyzed Valley case, the parents made it very clear that at the times the district was trying to reconvene the IEP meeting, they were not available. They did not say they would not come. On the more than one attempt that the district attempted to reconvene the meeting, they kept saying, we are not available, we will get back to you when we are available. Under the Paradise analysis, if the district had gone ahead with that IEP, the district conceivably could have put together a substantive offer of a free public education and then had that offer found to be invalid as a matter of law if proper parent participation had not been allowed. So you're saying that the fact that the parents did not refuse to participate, but rather withheld actual participation, left the matter in limbo. And it was only when the question of whether the parents would or would not participate was resolved that you could move forward and make a direct offer. Exactly. In fact, the Why couldn't you just go ahead and say and document that you made strenuous efforts to get the parents' cooperation and didn't get that cooperation? And that, thank you, and that issue goes to the very facts of this case. They had just come to the district in May. There was a very quick turnaround in terms of an initial assessment. The parents, it was during the summertime. The parents indicated they wanted to participate. And as this court noted in the Paradise case, we've made it clear that those individuals, like the parents, who have firsthand knowledge of the child's needs and who are most concerned about the child must be involved in the IEP creation process. And the court stated that they needed to be involved in that creation process unless, this is quoting the court, they affirmatively refused to attend. Therefore, under the facts of this case, and it won't be every case that would be this way, under the facts of this case, the district did not have time to go through the detailed requirements that the court noted under Title 34, Section 300.345, to go ahead with the IEP process without the parents' participation, which would have required, as counsel pointed out, a recording of letters. And if need be, a trip to their place of employment to get to the place where we would have a record that would show actual refusal. Had they simply said we're not coming, then we would have been able to go ahead with this process. And in this regard, both the district court and the administrative law judge through the Office of Administrative Hearings made a proper determination. The analogous situation, we believe, is contained in the Puyallup case, another case by this court. The court said that the equitable considerations should be considered in terms of deciding whether or not, even assuming there's a denial of faith, whether compensatory education is appropriate. And in the Supreme Court's decision in the Burlington case, which is another determination, that if a proper offer of a free public education is not offered, then it is an equitable remedy to allow for reimbursement. The facts of this case show something that unfortunately could lead to a deterioration of the principles and the purposes of the IDEA. Parents, and I'm a parent myself, I am not speaking ill of parents, parents will do what they think is best for their children, and will do whatever they can. Reading this court's analysis under the Shapiro case and its progeny, H.B. v. Lost Virgin's Unified School District, the idea behind parent participation is to get people to the table so that as much information concerning the child can be shared, so that proper educational programs can be created for children with exceptional needs. If we have a rule of law that says on the one hand, if you do not allow proper parent participation and meaningful parent participation, and then on the other hand, say that if a school district essentially doesn't, and I have one nuance point I want to emphasize on this, if the school district does not plow ahead, even though parents are saying we are available, we cannot come at this time, and therefore that can be a denial of faith, then not only is the school district put in an untenable position, but actually the very purpose of the IDEA is eroded and degraded. What other means did you use to try to get the parents to cooperate? As I understand the regulations say, if the parents, if neither parent can attend, you said here they indicated they could attend, but just not now. Is that the distinction here? Because you could have kept detailed records of that and gone ahead to record the repeated attempts, and then gone ahead and issued your IEP. Your answer is they said they would be available, they just kept continuing it. Well, but there were, and the timeline was that after the July 14, 2005 IEP, the parents then in August, in September, started to look through district programs. This is something they said they wanted to do. And it's important to remember that they had already started the applied behavior analysis program well before coming into the Riverside Unified School District. At that point, and there was a factual finding concerning this, the district tried on multiple occasions to have the parents attend, and they indicated they were not available at that time. And there was a specific finding to that effect by both Judge Passwork, the administrative logic before, and the district court. Instead of coming to the table, they then filed for due process. And therefore, the administrative process had started, and there was not an ability to give out an offer of fate. The nuanced point that I want to emphasize here is that the school district can only file for due process relief under a very limited set of circumstances. The school district can only essentially file to implement an offer of a free or public education, or any sort of offer to get parent cooperation or support to implement an offer of education programs if there is already an offer of fate on the table, and the parents refuse to do that. Or if the parents refuse an initial assessment. They didn't do that. So in real terms, the school district was left without a meaningful way to require the sort of parent participation that the jurisprudence of this circuit mandates. As a result, Your Honors, we respectfully submit that the administrative decision by the administrative law judge was proper. The decision by the district court was also proper. And one last point. And this case presents the difficulty that's present in this area of law. The parents have launched a broad-based attack, essentially saying that the school district should have gone ahead and rolled over them and made an offer of fate, even though they were not at the table. But they've also attacked the assessments that the school district completed. That issue was again resolved in the school district's favor. The administrative law judge found that the assessments, while not perfect, contained similar data that ultimately the parents provided. Therefore, the school district's assessments were not so flawed as to create a fundamental flaw in the entire process. But, Your Honors, we will leave with this point. If the district court's decision is upheld, there will be a clear signal that the requirement of cooperation, and as the court noted in its closing in the Puyallup case, compromise and cooperation are far better means to address the needs of children with exceptional needs rather than litigation. And affirming the district court's decision will create a very clear and yet very proper indication that if parents wish to go out and get privately funded programs, if they choose to do that, then if they wish to seek public funding for that, then they must engage in good faith in the IEP process. We respectfully request that this court uphold the district court's decision. Thank you. Yes. If the court were to decide this case in the manner you've just suggested, would that preclude the parents from coming back in the future and as to future education for the child, seeking public reimbursement? It would not. It would simply indicate that in order for the IEP process to be, it would simply indicate that as to what happened in the past, there was a proper basis in my compensatory education. As to what happens in the future, the IDEA is an ongoing stream of responsibility. Therefore, the same protections under 300.345, the same protections under 300.345, the same protections under 300.345, in terms of making sure parents are available. If they do not come, if they refuse, then we will have to make offers of faith. And then if there is still disagreement, if the school district is not able to put together a legally defensible offer of faith, and the parents have gone out and got other services, then Burlington is still available. That is one of the issues that makes these IDEA cases so unique in the jurisprudence anywhere in the law. And that is instead of having a kind of collision of rights and a determination of what happens with people, you have an ongoing stream of responsibility and even cases that are decided, unfortunately, only give indications in terms of guideposts in the future. That's why this is an important case. Thank you. Thank you. Very briefly, Your Honors. The purpose of a written offer required once an IEP team, a district has done all of its assessments, which the district admitted, it's in the record, as of July 14, 2005, it had completed all its assessments. It didn't need any further documentation. It didn't need, it would like to have more things, but it said all of the information that was provided or could have been provided would not have changed the assessments, would not have changed the recommendations of the district, yet it made no offer. The requirement of the offer is so that the parent knows what the district is offering. What is your specific placement? What are the services that are being offered? So that the parent can go then have an understanding and do some sort of comparison. This is the Union v. Smith case. It's required. Without an offer at the IEP meeting once the assessment is done, the parent has no ability to even know what the district thinks is an appropriate assessment and accept or reject it. There was evidence in the record that there had been one IEP notice sent out. There was no requirement or no compliance with either 34 CFR 300-322C or California Ed Code 56341.5 regarding the requirement to make additional comments. Contact, communications, there was no documentation whatsoever and the district could provide none that they had attempted to arrange or schedule the IEP meeting. There just was nothing in the record. And the parents testified that, yes, they had said we'd like to continue it. They didn't recall receiving any other calls. They didn't recall receiving any other information, and the district couldn't provide it. Yes. The parents were there on July 14th of 5. The district is not allowed to escape a duty because it simply says we think we need more information. They needed to make an offer. The duties imposed on the district by IDEA and by state law are very, very strict. They are very, and the parent's failure to cooperate, as Target Range says, do not mitigate the district's duty in any way, shape or form. The district could have scheduled another IEP. It was required to schedule another IEP. It did not. The district was required to make a written offer. At some point it never did. The parents are left without any information. We do not believe the evidence shows the parents did not cooperate. We do not believe that at all. We do not believe that the parents did anything that would deprive their child of the right to receive a written offer. Thank you. Number six. The last matter submitted, Placenta, Yorba Linda, Unified School District. PS versus Placenta. Thank you.
judges: Pregerson, Nelson, Singleton